UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



_____

ROSEANN KILDUFF,

             Plaintiff,

    v.

ROCHESTER CITY SCHOOL DISTRICT,
SUPERINTENDENT JEAN-CLAUDE
BRIZARD

             Defendants.

_____

**DECISION AND ORDER**

10-CV-06387 EAW

## INTRODUCTION

Plaintiff Roseann Kilduff ("Plaintiff") is a former employee of defendant Rochester City School District (the "RCSD"). Plaintiff alleges two causes of action pursuant to 42 U.S.C. § 1983 based on her contention that, during the course of her employment, Defendants retaliated against her for exercising her First Amendment right to freedom of speech. Defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Defendants' motion is granted.

## BACKGROUND

Plaintiff began working for the RCSD as the coordinator for homeless students in September 2006. (Dkt. 16-4 at ¶ 8; Dkt. 21-1 at ¶ 8). Plaintiff was responsible for operation of the RCSD's homeless program. (Dkt. 16-4 at ¶ 11; Dkt. 21-1 at ¶ 11). Plaintiff's job responsibilities included advocating on behalf of homeless students to "remove barriers to securing in a timely manner a free appropriate public education,"

- 1 -

providing professional development to school personnel regarding the McKinney-Vento Homeless Assistance Act, 42 U.S.C. §§ 11431 *et seq.* ("McKinney-Vento"), and acting as a liaison between homeless students and school agencies. (Dkt. 21-4 at 71).

In January 2009, the RCSD appointed Plaintiff as the "point person" for a district-wide "Title I" audit. (Dkt. 16-4 at ¶ 8; Dkt. 21-1 at ¶ 8). In her role as point person for the Title I audit, Plaintiff communicated with Melanie Faby, the Coordinator for Homeless Education at the New York State Education Department ("NYSED"). (Dkt. 16-4 at ¶¶ 9-10, 13; Dkt. 21-1 at ¶¶ 9-10, 13). Plaintiff had no relationship with Ms. Faby prior to the Title I audit. (Dkt. 16-4 at ¶ 24; Dkt. 21-1 at ¶ 14).

The Title I audit resulted in NYSED issuing a monitoring report to the RCSD. (Dkt. 16-4 at ¶ 16; Dkt. 21-1 at ¶ 16). Plaintiff drafted the RCSD's corrective action plan in response to the monitoring report; the corrective action plan addressed issues including expenditure of homeless funds, allocation and return of funds, identification of homeless children, enrollment policy and rights of homeless students, transportation issues, and dispute resolution and appeal. (Dkt. 16-4 at ¶¶ 17-18; Dkt. 21-1 at ¶¶ 17-18).

Plaintiff claims to have had further communications with Ms. Faby in September 2009. (Dkt. 21-1 at ¶ 19). According to Plaintiff, she provided Ms. Faby with details about the "flaws in the homeless program" and specific homeless students whose rights were allegedly being violated, and further told her that the administration refused to effectively make changes. (*Id.* at ¶¶ 19, 28). Plaintiff also allegedly told Ms. Faby that she was being "targeted" and would not be in her position much longer. (*Id.* at ¶ 22). Plaintiff claims that she also shared her concerns with the New York State Technical &

Education Assistance Center for Homeless Students ("NYS-TEACHS") and an unnamed federal regulatory agency. (Dkt. 22 at ¶¶ 37, 44). The evidence indicates that Defendants were aware of Plaintiff's complaints to NYS-TEACHS (Dkt. 21-4 at 59), but there is no evidence in the record that Defendants were aware of the alleged complaints to the unnamed federal regulatory agency.

Plaintiff was granted tenure in September 2009. (Dkt. 16-4 at ¶ 29; Dkt. 21-1 at ¶ 29). Also in September 2009, Plaintiff began reporting to Audrey Cummings. (Dkt. 16-4 at ¶ 30; Dkt. 21-1 at ¶ 30). Plaintiff shared her concerns about the homeless program with Ms. Cummings. (Dkt. 16-4 at ¶ 30; Dkt. 21-1 at ¶ 30). Plaintiff alleges that she had numerous concerns about the manner in which the homeless program was being run, including about missing laptops that had been purchased with McKinney-Vento grant money. (Dkt. 22 at ¶¶ 2-9). Plaintiff claims to have contacted the RCSD's whistle-blower hotline regarding these concerns. (*Id.* at ¶ 10).

In late 2009, Defendants began an investigation into Plaintiff's conduct. (Dkt. 16-4 at ¶ 33; Dkt. 21-4 at 42-56). The investigation was conducted by David Mace of the RCSD's Safety and Security Department. (Dkt. 16-4 at ¶ 35; Dkt. 21-4 at 42-56). The investigation involved numerous allegations against Plaintiff, including that she failed to properly account for bus passes purchased by the homeless program; that she improperly donated homeless program school supplies; that she took laptop computers assigned to the homeless program; that she donated toiletries belonging to the homeless program; that she failed to properly account for her work time; and that she improperly removed homeless program files from her computer. (Dkt. 21-4 at 42-56). The allegations that

Plaintiff failed to properly account for bus passes purchased by the homeless program and improperly donated homeless program school supplies were sustained; the remainder of the allegations were found to be unfounded or unprovable. (*Id.* at 55-56). During the pendency of the investigation, Plaintiff was instructed to report to the RCSD's "alternative work location," which Plaintiff refers to as the "rubber room." (Dkt. 16-4 at ¶ 34; Dkt. 22 at ¶ 56). Plaintiff claims she was required to report to the "rubber room" for five months. (Dkt. 22 at ¶ 62). According to Plaintiff, the investigation and her associated assignment to the "rubber room" were retaliation for her complaints to NYSED, NYS-TEACHS, and the unnamed federal regulatory agency.

Fact discovery in this matter closed on January 26, 2012. (Dkt. 14). Defendants filed the instant motion for summary judgment on April 27, 2012. (Dkt. 16). Plaintiff filed her opposition papers on June 26, 2012. (Dkt. 21).[1] Defendants filed their reply on July 10, 2012. (Dkt. 24). The case was reassigned to the undersigned on February 21, 2014, with no decision having been rendered on the pending motion. (Dkt. 31). On March 18, 2014, pursuant to a request from Defendants' counsel, the Court entered an order permitting the parties to make supplemental submissions. (Dkt. 23). Defendants made a supplemental submission on April 8, 2014, and Plaintiff filed a response to this submission on April 30, 2014. (Dkt. 33, 35).

---

[1] Plaintiff was represented by counsel at the time of the filing of her complaint and opposition submitted in response to the motion for summary judgment. Plaintiff's counsel was subsequently permitted to withdraw due to her suspension. (Dkt. 30).

## DISCUSSION

### I.   Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec.*, 475 U.S. at 586-87). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## II.   Plaintiff's Retaliation Claim

Plaintiff's first cause of action is for "Retaliation for Exercise of Free Speech under the First Amendment." (Dkt. 1 at 12). In particular, Plaintiff claims that "[i]n retaliation of her exercise of free speech under the First Amendment in complaining to the NYS Department of Education Homeless Office, Plaintiff was assigned to the 'rubber room' for five months where she languished doing nothing all day, and was the subject of unwarranted investigations, harassment and humiliation." (*Id.* at ¶ 67).

"To survive a motion for summary judgment on a First Amendment retaliation claim in the public employment context, the plaintiff must present evidence which shows [1] that the speech at issue was protected, [2] that he suffered an adverse employment action, and [3] that there was a causal connection between the protected speech and the adverse employment action." *Nagle v. Marron*, 663 F.3d 100, 105 (2d Cir. 2011) (quotations omitted). To show that the speech at issue was protected, a plaintiff must establish that she was speaking "as a citizen on a matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). "Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." *Lewis v. Cowen*, 165 F.3d 154, 163-64 (2d Cir. 1999) (citations omitted); *see also Anderson v. State of N.Y., Office of Court Admin. of Unified Court Sys.*, 614 F. Supp. 2d 404, 427 (S.D.N.Y. 2009) (court must evaluate whether alleged "whistle-blowing" comments were made as part of professional responsibilities or as a private citizen).

In this case, Defendants argue that Plaintiff has failed to produce evidence sufficient to demonstrate that her speech was protected. In particular, Defendants argue that Plaintiff's communications with Ms. Faby at NYSED were made in connection with the Title I audit within the scope of Plaintiff's professional duties and/or related to personal grievances. (Dkt. 16-5 at 14-16). In opposition to Defendants' motion, Plaintiff argues that she made her complaints to "independent agencies" and that she was therefore transformed into an "external whistleblower" whose complaints were entitled to First Amendment protection. (Dkt. 21 at 8-11).

"The objective inquiry into whether a public employee spoke pursuant to his or her official duties is a practical one." *Weintraub v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, 593 F.3d 196, 202 (2d Cir. 2010) (quotation omitted). A public employee's speech need not be mandated by her job description to be made pursuant to her official duties – it is enough that the speech be in furtherance of the purposes of the employment. *Id.* There is no checklist of factors that the Court considers in making its determination, but the following circumstances may be relevant: the plaintiff's job description; the persons to whom the speech was directed; and whether the speech resulted from special knowledge gained through the plaintiff's employment. *Brady v. Cnty. of Suffolk*, 657 F. Supp. 2d 331, 343 (E.D.N.Y. 2009).

In this case, taking into account the totality of the circumstances, the Court determines that Plaintiff was speaking within the scope of her official duties when she reported concerns about the manner in which the RCSD's homeless program was being run to NYSED and NYS-TEACHS. The job description for Plaintiff's former position

states that some of the "essential functions" of the role are to "[a]dvocate[] on behalf of homeless children, youth and their families to remove barriers to securing in a timely manner a free appropriate public education," to "[a]ct[] as a liaison between children, youth and their families with school and social agencies interpreting programs and obligations," and to "[w]ork cooperatively with community agencies." (Dkt. 21-4 at 71). Reporting issues with the homeless program to the New York state educational agencies tasked with ensuring compliance with federal law plainly furthered these "essential functions."

Plaintiff's complaints were also made to individuals and agencies that were within the supervisory chain with respect to the RCSD's homeless program. Plaintiff relies on cases in which employees complained to "external, unrelated entities" in opposition to Defendant's motion. *See Davis v. McKinney*, 518 F.3d 304, 314 (5th Cir. 2008) (complaints to the Federal Bureau of Investigation and the Equal Employment Opportunity Commission); *Freitag v. Ayers*, 468 F.3d 528, 545 (9th Cir. 2006) (complaints to a state senator and the Office of the Inspector General). These cases are readily distinguishable. Neither NYSED nor NYS-TEACHS is an "unrelated entity" with respect to the RCSD's homeless program. NYSED is tasked by statute with supervision of all public schools in New York State. *See* N.Y. Educ. Law § 101 ("The [education] department is charged with the general management and supervision of all public schools and all of the educational work of the state. . . ."). NYS-TEACHS is funded by NYSED and is responsible for monitoring school districts to ensure compliance with McKinney-Vento and for providing technical assistance and training to school district staff regarding

the education of homeless students. *See N.Y. State Educ. Dep't State Plan for the Educ. of Homeless Children and Youth* at 1-2 (July 2002) (available online at http://www.nysteachs.org/info-topic/nys-laws.html). In other words, these are the precise agencies that a reasonable employee in Plaintiff's position would have been expected to approach for assistance in addressing issues within the homeless education program. In fact, with respect to her communications with Ms. Faby, Plaintiff was specifically assigned by the RCSD to be the point person to communicate with Ms. Faby regarding the Title I audit and the RCSD's compliance with McKinney-Vento. These circumstances compellingly support the conclusion that Plaintiff was communicating her concerns to Ms. Faby in furtherance of her official duties.

Plaintiffs' speech was also based on information obtained through her role as coordinator for homeless students. Speech made to supervisory authorities regarding information obtained during the course of performing official duties is generally not entitled to First Amendment protection. *See, e.g., Healy v. City of N.Y. Dep't of Sanitation*, 286 F. App'x 744, 746 (2d Cir. 2008) (report of corruption based on evidence obtained while performing duties was not protected speech).

The Second Circuit Court of Appeals decision in *Weintraub* is on point. In *Weintraub*, a former public school teacher alleged that he had been retaliated against for filing a union grievance related to his employer's failure to discipline a student who had caused a safety hazard during class. 593. F.3d at 198. The Second Circuit Court of Appeals determined that the plaintiff's speech was not protected by the First Amendment because it was "a means to fulfill, and undertaken in the course of performing, his

primary employment responsibility. . . ." *Id.* at 203 (quotations and citations omitted). Similarly, Plaintiff's purported complaints to NYSED and NYS-TEACHS about the "barriers we were facing at the city school district" and alleged violations of the rights of homeless students (Dkt. 16-3 at 32, 34) were directed at fulfilling her primary employment responsibility of advocating for homeless students and ensuring that they received the services to which they were entitled.

The *Weintraub* court cited with approval two out-of-circuit cases, both of which support the Court's conclusion in this case.   In *Renken v. Gregory*, 541 F.3d 769 (7th Cir. 2008), the Seventh Circuit Court of Appeals considered whether a college professor who made several complaints about the administration of a National Science Foundation grant for which he and his colleagues had applied was engaged in protected speech. *Id.* at 773.  The court affirmed a grant of summary judgment to the employer, explaining that although the complaints at issue were not a requirement of the plaintiff's job, they aided him in the fulfillment of his employment obligations.  *Id.* at 773-74.   Similarly, in *Williams v. Dallas Independent School District*, 480 F.3d 689 (5th Cir. 2007), the Fifth Circuit Court of Appeals held that a high school athletic director who wrote memoranda to his office manager and to the principal alleging misuse of funds appropriated for athletic activities had not engaged in protected activity because his speech was intended to help effectuate his duties.  *Id.* at 693-94.   *Renken* and *Williams* both support the conclusion that Plaintiff's speech, which was aimed at fixing problems with the RCSD's homeless program and thereby fulfilling Plaintiff's responsibility of procuring services for homeless students, was made in the course of her official duties.

Plaintiff does contend that in October 2009, she made a complaint to an individual named Eric Tars at an unnamed federal regulatory agency. (Dkt. 22 at ¶ 44). As a threshold matter, Plaintiff has not provided any information regarding the name or function of the federal regulatory agency for which Mr. Tars allegedly worked or the context in which she allegedly contacted him. Plaintiff therefore has not satisfied her burden of producing evidence that her communications with Mr. Tars were made as a private citizen. Moreover, and as Defendants correctly point out, the record is devoid of any evidence that the RCSD or any of its employees or agents were aware of this alleged complaint. A First Amendment retaliation claim does not exist where the defendants had no knowledge of the allegedly protected speech. *See Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 223 (N.D.N.Y. 2012), *aff'd*, 524 F. App'x 742 (2d Cir. 2013); *Spencer v. Holley Cent. Sch. Dist.*, 734 F. Supp. 2d 316, 321 (W.D.N.Y. 2010).

Plaintiff also allegedly complained to Ms. Faby in September 2009, regarding her concerns that her job was in danger. (Dkt. 16-3 at 35). Individual concerns related to Plaintiff's personal employment situation are not protected by the First Amendment. *See, e.g., Huth v. Haslun*, 598 F.3d 70, 74 (2d Cir. 2010); *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993); *Brown v. Research Found. of SUNY Oneonta*, 381 F. App'x 119, 120 (2d Cir. 2010).

In sum, Plaintiff has failed to meet her burden of showing that she engaged in speech protected by the First Amendment. The speech identified by Plaintiff in opposition to Defendant's motion for summary judgment either related to Plaintiff's official duties as the coordinator for homeless students and was made in that capacity or

was related to Plaintiff's personal employment situation. Neither of these categories of speech is entitled to constitutional protection. Defendants are therefore entitled to summary judgment on Plaintiff's first cause of action.[2]

## III.   Plaintiff's *Monell* Claim

Plaintiff's second cause of action seeks to hold the RCSD liable for the purported constitutional violations of its officials pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (Dkt. 1 at ¶¶ 71-74). Under *Monell*, a municipal entity may be held liable pursuant to 42 U.S.C. § 1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom." 436 U.S. at 694-95. A plaintiff cannot maintain a *Monell* claim where she has not established an underlying constitutional deprivation. *See Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006).

As set forth in detail above, Plaintiff has failed to establish an underlying violation of her constitutional rights. Therefore, her *Monell* claim must fall with her First Amendment retaliation claim.

---

[2]   The parties have devoted significant portions of their briefs to arguments about whether Superintendent Brizard was sued in his individual or official capacity. Because the Court has determined that Plaintiff has failed to establish a *prima facie* First Amendment retaliation case, it need not reach this issue.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted. The Clerk of Court is instructed to enter judgment in Defendant's favor and close the case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: September 16, 2014
       Rochester, New York